**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **ELIZABETH FRYBERGER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.            ) | Case. No. 5:16-cv-5224-PKH |
| ) | |
| **UNIVERSITY OF ARKANSAS;** ) | |
| **BOARD OF TRUSTEES OF THE** ) | |
| **UNIVERSITY OF ARKANSAS,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Defendants have presented an extensive but misleading Motion to Dismiss, more akin to a Motion for Summary Judgment, and more appropriate at the close of discovery. Not only does the motion go beyond the facts alleged in the Complaint, it also misconstrues and misapplies precedent in an effort to make an argument for dismissal. As explained below, Plaintiff, *in her 222 paragraph Complaint* (Doc 1), has alleged a plausible violation of Title IX, and the Defendants' motion should therefore be denied.

**II. LEGAL STANDARDS**

A civil complaint must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347 (2005)). In other words, the complaint must suggest a right to relief beyond "labels and conclusions" and present a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 550-70 (2007). "Asking for plausible grounds . . . does not impose a probability requirement at the

pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claimed violation. *Id.* at 556. A court "review[s] the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

In considering a motion to dismiss for failure to state a claim, a court must accept as true all allegations contained in the complaint, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1033 (8th Cir. 2012); *see Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

### III. ARGUMENT

#### A.  Plaintiff Will Dismiss Her SaVE Act Claim.

Defendants first move for dismissal of Plaintiff's SaVE Act claim. *See* Brief in Support, at 10. By an amended complaint, Plaintiff will dismiss the SaVE Act claim without prejudice. As such, Defendants' argument is moot.

#### B.  Congress Has Abrogated State Immunity under Title IX for All Forms of Relief.

Next, Defendants assert that they are immune from monetary awards pursuant to Title IX claims. *See* Brief in Support, at 10-15. To the contrary, Congress expressly provided that all remedies available against private entities—including, of course, monetary awards—are equally available against the states.

"At the time Congress enacted Title IX, it did not include within the statute mention of whether it applied to state governments." *Franks v. Kentucky Sch. for the Deaf,* 142 F.3d 360, 362

(6th Cir. 1998). "Subsequently, Congress effectually amended Title IX by providing in § 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U.S.C. § 2000d-7, that:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... title IX of the Education Amendments of 1972[, 20 U.S.C. §§ 1681-1688], ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."

*Id.*

The various Courts of Appeals have been unanimous in upholding this abrogation of immunity, as either a proper exercise of congressional authority pursuant to § 5 of the Fourteenth Amendment, a waiver of immunity conditioned on receipt of federal funds, or both. *See, e.g., Bell Atl. Md. V. MCI Worldcom*, Inc., 240 F.3d 279, 292 (4th Cir. 2001) ("any State reading that provision [42 U.S.C. § 2000d-7(a)(1)] would clearly understand that, by accepting Title IX funding, it was consenting to resolve disputes regarding alleged violations of the Act's antidiscrimination provisions in federal court"); *Franks*, 142 F.3d at 363 ("since Congress made its intention to abrogate the states' Title IX immunity unmistakably clear, and it had the authority to do so pursuant to Section 5 of the Fourteenth Amendment, we hold that Congress successfully abrogated the states' Eleventh Amendment immunity from Title IX lawsuits"); *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997) ("Because the Supreme Court has repeatedly held that those substantive provisions [of the Fourteenth Amendment] proscribe gender discrimination in education . . . we are unable to understand how a statute enacted specifically to combat such discrimination could fall outside the authority granted to Congress by § 5.").

Defendants agree that Congress unmistakably intended to abrogate sovereign immunity for Title IX violations, but—relying primarily on *Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651 (2011)—argue that the abrogation does not extend to money damages. *See* Brief in Support, at 11-15. But as the Defendants admit in their brief, the "United States Supreme Court has recognized an implied private right of action for money damages under Title IX against municipal entities or private universities." *See* Brief in Support, at 12; *see also Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992) ("In sum, we conclude that a damages remedy is available for an action brought to enforce Title IX."). Thus, because remedies against the State are available "to the same extent as such remedies are available … against any public or private entity other than a State," and because monetary damages are available in an action against entities other than the State, monetary damages are necessarily available against the State, too. The cases cited by the Defendants, none of which discuss 42 U.S.C. § 2000d-7, are readily distinguishable.

For example, in *Sossamon*, the statute at issue (42 U.S.C. § 2000cc) contained this ambiguous provision: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Sossamon*, 131 S. Ct. at 1656. The Court held that the statute did not clearly and unambiguously authorize money damages against the states, because "[f]ar from clearly identifying money damages, the word 'appropriate' is inherently context-dependent." *Id.* at 1659; *see Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006) (same); *see also Dawson v. Burnett*, 631 F. Supp. 2d 878 (W.D. Mich. 2009) (same). In fact, the Court in *Sossamon* seemed to assume that money damages against a state were authorized by 42 U.S.C. § 2000d-7 but determined that RLUPIA was not covered by that statute. *See id.* at 1662. Similarly, in both *Hoffman* and *Nordic Village*, the Supreme Court considered Section 106 of the Bankruptcy Code and held that money damages were unauthorized, in part because the "language

of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery," echoing "the wording of sections of the Code such as § 505." *Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96, 101-102 (1989); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-37 (1992). As stated, 42 U.S.C. § 2000d-7, by contrast, explicitly states that all remedies available against non-state actors are equally available against the state.

The other two cases presented as on-point are also unhelpful. The unpublished district court opinion in *Cox* never mentions 42 U.S.C. § 2000d-7 or discusses abrogation; instead the court apparently felt bound by the general rule that public colleges and universities "are arms of their respective state governments and immune from suit." *Cox v. Univ. of Ark.*, No. 4:05CV0001254-WRW, 2006 WL 1185380 (E.D. Ark. May 3, 2006), *rev'd in part on other grounds by Cox v. Sugg,* 484 F.3d 1062 (8th Cir. 2007). Likewise, the court in *Lipsett* simply applied the general rule and ignored § 2000d-7, which explicitly applies to Title IX actions. *Lipsett v. Univ. of Puerto Rico,* 745 F. Supp. 793, 797 (D. P.R. 1990)).

In sum, because the Supreme Court has held that Title IX permits a private right of action for monetary damages, and because § 2000d-7 permits all Title IX remedies against the state, there is only one reasonable interpretation: the Eleventh Amendment does not bar actions for money damages for violations of Title IX. The Defendants' argument otherwise—specifically that this Court should hold states immune from monetary awards for violations of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, and the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance—finds no support in the text of the relevant statutes, the governing opinions of the Supreme Court, or the policies underlying anti-discrimination legislation. Indeed, it would be particularly strange to allow only

injunctive and administrative remedies for Title IX complainants, since those forms of relief are likely to be mooted, either explicitly or implicitly, upon graduation. The motion should be denied.

### C. Plaintiff Has Alleged Sufficient Facts to Establish a Plausible Title IX Violation.

The Supreme Court has held that an institution may be liable for damages under Title IX student-on-student sexual harassment where the funding recipient is deliberately indifferent to sexual harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999); *see Roe v. St. Louis University*, 746 F.3d 874 (8th Cir. 2014). "To be actionable an institution's deliberate indifference must either have caused the harassment or made students vulnerable to it." *Roe*, 746 F.3d at 882. The Plaintiff must show the University had "substantial control over both the harasser and the context in which the known harassment occurs." *Id.*

Further, the Supreme Court has noted that "'[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach," encompassing retaliation, among other things. *See Jackson v. Birmingham Bd. Of Ed.*, 544 U.S. 167, 173-77 (2005). The Title VII framework generally applies to retaliation claims under Title IX. *See, e.g., Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002); *Clinger v. N.M. Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1168 (10th Cir. 2000). Thus, to establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in protected activity; (2) an adverse action occurred; and (3) a causal connection. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

> **a. Plaintiff alleges facts that Defendants had actual knowledge of discrimination in the Defendants' programs and failed to adequately respond.**

Where a Plaintiff is proceeding based on discrimination, not only to herself but based on institutional policy, actual knowledge is not necessarily required for a claim that the harassment resulted from institutional policy. *Roe*, 764 F.3d at 882. At least two federal courts have allowed cases to proceed in the absence of traditional "actual knowledge" where the plaintiff presented evidence that the harassment/assault resulted from an institutional policy. *See Williams v. Bd. of Regents of the Univ. Sys. Of Ga.*, 477 F.3d 1282 (11th Cir. 2007); *Simpson v. University of Colorado*, 500 F.3d 1170 (10th Cir. 2007) (sexual assault was caused by an official policy of "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy.")

In this case, Plaintiff alleges that the University was deliberately indifferent in their implementation, or lack thereof, of policies for coaches, trainers, and student-athletes to follow when a student-athlete is a victim of sexual assault. Further, Plaintiff alleges that Defendants were deliberately indifferent and wholly failed to address the sexually hostile environment ongoing on campus. (Complaint ¶ 212). Specifically, the University disregarded the hearing panel's finding that the harasser was a "significant threat toward the community," and the University Chancellor signed off on the extension of his expulsion date until after his graduation or until only the Plaintiff was no longer present on campus. (Complaint ¶¶162, 180). Further, after Plaintiff filed her Title IX discrimination complaint with the university in October 2014, in retaliation the athletics department and coach allowed rumor mongering among the Plaintiff's teammates and coaches subjecting Plaintiff to a hostile environment. (Complaint ¶¶ 69, 75-77). The Defendants were indifferent, and are still indifferent to the complete lack of support or care by the tennis coach that

recruited Plaintiff to the University in the first place, and the tennis coach's enthusiasm at the prospect of Plaintiff no longer being on the tennis team for the benefit of team grade point average, ultimately resulting in Plaintiff having to leave the University.

For a Title IX claim that does not involve the Defendant's official policy, actual knowledge is required. "[T]he Supreme Court explained in *Gebser* [], that Title IX damage actions which do not involve an institution's official policy require a showing that 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf [had] actual knowledge of discrimination in the recipient's programs and fail[ed] adequately to respond." *Roe*, 746 F.3d at 882. However, "the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Thomas v. Bd. Of Trustees of Neb. State Colleges*, No. 8:12-cv-412 (D. Neb. July 28, 2015) (quoting *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006)).

"Actual knowledge" of prior acts of harassment has several components. Defendants begin their argument by citing a Seventh Circuit decision, *Hansen v. Bd. Of Trs. of Hamilton Southeastern Sch. Corp.* to allege that that "actual knowledge" of misconduct can only be shown when prior incidents are "so great that they [were] almost certain to materialize if nothing were done." 551 F.3d 599, 605-06. It is clear the Defendants are attempting to mislead the Court in their application of *Hansen*. The dicta quoted is limited to the funding recipient's liability under Title IX with regard to teacher misconduct, not student-on-student harassment. *Id.*

In their creative interpretations of the law, Defendants describe the concepts of "actual knowledge" of prior acts as (1) acts sufficiently similar in nature; (2) including a severity component; and (3) "a relevance and substantiation" component. In this response, Plaintiffs will

address those components of "actual knowledge" recognized by the Supreme Court and the Eighth Circuit Court of Appeals.

First, Title IX imposes liability only if there is discrimination "on the basis of sex." *Wolfe*, 648 F.3d at 865. The harasser's prior conduct needs to be either sexual in nature or committed on the basis of sex. *Thomas*, *supra*. Defendants allege that none of the facts of Higgs' prior criminal encounters were alleged to have been committed on the basis of sex. However, the Plaintiff states that the harasser was reported for "assault against a female" and has previously been served with "an order of protection against a female." (Complaint at ¶¶ 56, 58.) The reasonable inference is that the harasser committed prior violence against a woman. Plaintiff, through discovery, additional pleading, or both, will elaborate on the prior conduct of Higgs to the extent it pertains to violence against women on the basis of sex.

Second, there is a severity component requiring acts that are so "severe, pervasive, and objectively offensive that they can be said to deprive the victim of access to the educational opportunities of benefits provided by the school." *Davis,* 526 U.S. at 650. "If [the] school has actual knowledge only of prior conduct that is not sufficiently severe to constitute discrimination under Title IX, it will be more difficult to prove that this prior conduct shows actual knowledge of a substantial risk of actual discrimination…Of course, a harasser's conduct may escalate in severity over time, and there is no "free pass" for a school just because the conduct at issue is the first to rise to the level of Title IX discrimination." *Thomas, supra*. The Eighth Circuit in *Thomas v. Bd. of Trs. of the Neb. State Coll.* "affirm[ed] the district court's "detailed and thoughtful analysis and decision." No. 15-2792. 2016 WL 3564252, at *4 (8th Cir. July 1, 2016) (unpublished). The possibility of further encounters between the harasser and victim could create a sufficiently hostile environment, enough of which to deprive the victim of educational

opportunities. *Wills v. Brown Univ.*, 184 F.3d 20, 36-37 (1st Cir. 1999). The Complaint has alleged that the Defendants had actual knowledge of Higgs' three prior violent acts. The resulting encounter surrounding the acts were performed by the University police department, they were located on campus, and Higgs was an international student and athlete. Further, the Defendants had knowledge of the severity of the Plaintiff's sexual assault, yet allowed the harasser to appeal on non-appealable grounds, pushed his effective expulsion date until after graduation, defended that decision through University Counsel in writing to the Plaintiff, and then only retreated after a reporter's inquiry (¶¶ 189, 191). The constant potential for interactions supports the claim that the harassment was "severe, pervasive, and objectively offensive." Viewing these facts with all reasonable inferences in Plaintiff's favor, the Defendants had knowledge of these incidents and the severity.

Third, the Court must consider the credibility and source of notice to the funding recipient. *Shrum ex rel. Kelly v. Kluck.* 249 F.3d 773 (8th Cir. 2001). The Defendants allege that "the Eighth Circuit Court of Appeals has required significantly more than conclusory allegations of actual knowledge to support Title IX claims." The Defendants failed to include a citation for their statement, but Plaintiff will assume Defendants are relying on *Shrum*. In which the Eighth Circuit held that the school did not have actual knowledge where it did not possess any conclusive proof outside of rumors, investigations, and student statements. However, the Court in *Thomas* "doubts that the *Shrum* court intended to set the bar for actual knowledge under Title IX as high as the phrase 'conclusive proof' would tend to suggest." *Thomas, supra,* n. 4. *Shrum* is nonetheless relevant for the broader principle that credibility and source of notice are relevant factors to consider." *Id.* In this case, the Defendants' own police department investigated Higgs at least three times for allegations of violent acts. Further, Higgs' track coach, Travis Geopfert, admitted to

having knowledge of Higgs' "documented issues of misconduct while here at the university." (Complaint ¶ 133). In addition, Higgs was an international student, thus monitored by the University for student visa requirements. (Complaint ¶ 166). Again, viewing these facts with all doubts in the Plaintiff's favor, the source of the actual knowledge was credible.

The Defendants discuss the facts of *Ostrander*, *Shrum*, and *Thomas*. According to Defendants, all of these cases "resulted in dismissal of Plaintiff's Title IX claims." However, *Ostrander* concerned a motion for summary judgment and judgment as a matter of law, *Shrum* concerned a motion for summary judgment, and *Thomas* also concerned a motion for summary judgment. All of the above cases allowed time for discovery and were based on the evidence able to be obtained past the initial pleading stage. At the present pleading stage in this case, Plaintiff has not had a chance to perform discovery and fully gather any and all evidence which may support her claims, yet the Complaint is thorough and specific in its allegations, and a claim of actual knowledge is plausible based on the face of the Complaint.

> **b. Plaintiffs allege facts that Defendants had substantial control over both the harasser and the context in which the known harassment occurred.**

The substantial control element is due to the requirement that harassment occur "under" the "operations" of a funding recipient." *Davis*, 526 U.S. at 645. "Deliberate indifference makes sense as a theory of direct liability under Title IX where the funding recipient has some control over the alleged harassment." *Id.* at 644. Title IX liability applies to circumstances where the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id*. at 645.

Here, as the Complaint alleges, the harasser was an international student and athlete at the University of Arkansas. Therefore, the harasser was subject to the University of Arkansas's control, if not only because he was a student of the University but also because his international

visa status was under the University's control. (Complaint ¶ 166). The context in which the known harassment occurred was on the University's campus, inside one of their dormitories. (Complaint ¶ 59). Therefore, the harassment occurred on school grounds, in a University-owned and supervised building, and by an international student subject to University remedial action. Based on these facts as taken from the Complaint, it is more than plausible that the Defendants had substantial control over the harasser and the context of the harassment.

### c. The Complaint alleges that Plaintiff was subjected to harassment caused by the Defendants' deliberate indifference.

The Supreme Court imputes Title IX liability on funding recipients that are deliberately indifferent to known acts of peer harassment. *Davis*, 526 U.S. at 650-51. The failure to respond or deliberate indifference standard is in "'rough parallel' to the Title IX administrative enforcement scheme, which is based on 'an official decision by the recipient not to remedy the violation.'" *Roe*, 746 F. 3d at 882 (*quoting Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The deliberate indifference standard is "stringent" and "require[es] proof that the official disregarded a known or obvious consequence of his action." *Id.* "[T]he recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.; see Davis*, 526 U.S. at 648-649.

For a Complaint to be dismissed under this element, the Plaintiff must have failed to allege facts to plausibly substantiate a claim of deliberate indifference. However, this is simply not the case. Once again, the Defendants' enjoy taking liberties in misconstruing and exaggerating not only the cases that apply under this cause of action, but also the facts as specifically alleged in the Complaint. The standard is not whether or not the University, after coming to the wrong conclusion, came to the right conclusion regarding the harasser in this case. The standard is the deliberate indifference shown by the University in all aspects of the discrimination complaint and institutional policy.

Notwithstanding Paragraph 212 of the Complaint that alleges seventeen (17) separate acts which constitute deliberate indifference by the University, the Defendants have conveniently hidden from specific facts alleged in the Complaint that are clearly unreasonable responses to peer harassment. Namely, the University's decision to expel the harasser *after he graduated* thus allowing him to continue as a student at the University, even though the hearing panel found him to be a "significant threat to the University." (Complaint ¶¶ 162, 179). The Defendants allowed the harasser the option to return to the University, so long as the Plaintiff was no longer a student or until May 2018, "whichever occurred first," thus subjecting other female students to the possibility of similar harassment. (Complaint ¶ 180). The Defendants emphasize the fact that the harasser was "expelled," again failing to mention the "after graduation" condition to the expulsion. In fact, as stated in paragraph 189 of the Complaint, associate general counsel for the University defended their expulsion date being after the graduation of the harasser. After the media insisted on knowing why the University chose to expel the harasser after he graduated, the Defendants then changed the date to immediate expulsion. (Complaint ¶ 191).

The Defendants' preference for the harasser over the assault victim supports a plausible claim of deliberate indifference was the Defendants preference for the harasser over the victim. In the Motion to Dismiss, the Defendants completely fail to address their allowance of a letter from the track coach to support the harasser at the review hearing, while they disallowed the victim from relying upon a similar letter from her athletic trainer in the same hearing and for the same purpose, establishment of credibility and character. (Complaint ¶ 132). The accused was also allowed additional meetings prior to the disciplinary hearing, not equally afforded to Plaintiff. (Complaint ¶ 145). In addition, the University did not inform the victim of the full disciplinary decision following the appeal. (Complaint ¶ 184).

In addition to the above examples, the Complaint alleges separate acts of deliberate indifference by the University, including but not limited to, delayed execution of a "no contact order"; delayed coordination of accommodations only offered upon Plaintiffs persistence; failure to implement athletic policies that clearly set out the procedure for coaches, trainers, and student-athletes to follow when a student-athlete is a victim of sexual assault; the University tennis coaches permitting rumor mongering among the team subjecting the Plaintiff to a hostile team environment; failing to use or require a qualified Title IX hearing panel; allowing the accused to appeal, and thus stay on campus longer, on grounds not appealable per University policy; and refusing to disclose to Plaintiff whether Higgs received his diploma or was still on campus following the appeal decision modification. (Complaint ¶ 212).

Based on the foregoing facts alleged in the Complaint, it is certainly plausible that the Defendants acted with deliberate indifference, and therefore a Motion to Dismiss is not proper.

### d. Plaintiff has sufficiently pled facts showing causation and systemic effect.

Defendants next move to dismiss on the basis that Plaintiff has failed to show "further harassment" or a "systemic effect." *See* Brief in Support, at 32-33. But Title IX does not require, as Defendants suggest with misleading citations to unpublished case law, that a Plaintiff suffer double harassment—harassment that is reported, followed by additional harassment. Instead, as stated, Title IX requires a showing of intentional discrimination, which may take many forms, including deliberate indifference and retaliatory acts. "To be actionable an institution's deliberate indifference must either have caused the harassment or made students vulnerable to it." *Roe*, 746 F.3d at 882. As explained above, the University's actions made students, including Plaintiff, vulnerable to sexual assault.

Similarly, a systemic effect is not inferred *only* from harassment that continues after a report is filed. The point of the Supreme Court's caution in *Davis* was to say that a University's actions (or omissions) that put an individual Plaintiff at risk should, in theory, be sufficiently severe to satisfy the relatively high bar of deliberate indifference. Plaintiff has sufficiently pled such facts, including, for example, the allegations that the University lacked appropriate policies for coaches, trainers, and student-athletes to follow when any student-athlete is a victim of sexual assault, that the University knowingly allowed a dangerous environment to foster on campus, and that the University was aware of this particularly assailant's violent history. Further, the University's failure to properly respond to the assault in this case has a chilling effect on reporting and sends a signal to other men that sexual assault may be tolerated. This is precisely the kind of "systemic effect" the Supreme Court described in *Davis*. *See Davis*, 526 U.S. at 650-54.

In any event, Defendants' argument on this point does not extend to retaliation, which as described above is sufficiently pled in the Complaint. The motion should be denied.

### D. Rule 12(b)(6) is Not the Proper Method for Challenging Punitive Damages; Alternatively, Punitive Damages May Be Awarded Under Title IX.

Finally, Defendants ask that Plaintiff's "request" for punitive damages be dismissed. However, Rule 12(b)(6) refers only to failure to state a "claim." Punitive damages are a remedy, not a claim. *See, e.g., Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002) (analyzing punitive damages as a "remedy"); *Edwards v. Freeman*, 951 F. Supp. 2d 120, 123 n.3 (D. D.C. 2013) ("Since punitive damages are not a cause of action, but rather a form of relief, the Court declines to consider them as such."); *see also Wolfe ex rel. W.W. v. Fayetteville, Ark. Sch. Dist.*, 600 F. Supp. 2d 1011, 1025-26 (W.D. Ark. 2009) (noting that there is authority both for and against an award of punitive damages under Title IX but determining that the issue should "be resolved at a later stage in this litigation"). As such, Defendants' motion should be denied.

Regardless, punitive damages should be available in actions under Title IX. Courts finding to the contrary have typically relied on the Supreme Court's decision in *Barnes*. *See, e.g., Mercer v. Duke Univ.*, 50 Fed. Appx. 643 (4th Cir. 2002). But it is beyond dispute that *Barnes* is binding only on actions under Title VI, the 3Americans with Disabilities Act, and the Rehabilitation Act. *See Barnes*, 536 U.S. at 189-90. Those three pieces of legislation are explicitly linked by statute. *See id.* at 185 ("Section 203 of the ADA declares that the 'remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides' for violations of § 202. 42 U. S. C. § 12133. Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the 'remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available' for violations of § 504, as added, 92 Stat. 2983, 29 U. S. C. § 794a(a)(2)."). There is no such language in Title IX.

Indeed, the Supreme Court has previously recognized that "all appropriate relief" should be available under Title IX. *See Franklin*, 503 U.S. at 69. Because Title IX actions often involve student athletes, compensatory damages are limited; lost wages and pain and suffering as a result of physical injury are rare in this context. Similarly, injunctive relief provides no motivation for compliance on the front-end, and such claims are often mooted upon graduation. Relief from civil rights violations is only "appropriate" if it has teeth; in the Title IX context, that requires the possibility of punitive damages. *Cf. Franklin*, 503 U.S. at 75-76 (holding that backpay and prospective relief "are clearly inadequate" remedies for a Title IX violation, because the petitioner was a student that no longer attended the defendant school); *Cannon v. University of Chicago,* 441 U. S. 677, 703-06 (1979) ("termination of federal financial support for institutions engaged in discriminatory practices . . . often may not provide an appropriate means of accomplishing the second purpose [to provide individual citizens effective protection against [discriminatory]

practices]" and explaining that "[t]he award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute"). It follows that public policy dictates that common-law immunity does not apply. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-71 (1981); *see generally* Katrina A. Pohlman, Note, *Have We Forgotten K-12? The Need for Punitive Damages to Improve Title IX Enforcement*, 71 U. PITT. L. REV. 167. The Defendants' motion should be denied accordingly.

## IV. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' motion in full.

Respectfully submitted,
Elizabeth Fryberger, Plaintiff

By: /s/George M. Rozzell IV
George Rozzell, Ark Bar 08032
Kristin L. Pawlik, Ark Bar 99177
KEITH, MILLER, BUTLER,
SCHNEIDER & PAWLIK, PLLC
224 S. 2nd Street
Rogers, Arkansas 72756
Phone: 479-621-0006
Fax: 479-631-6890
Email: grozzell@arkattorneys.com
kpawlik@arkattorneys.com

*Attorneys for Elizabeth Fryberger*

## **CERTIFICATE OF SERVICE**

      I, George Rozzell, hereby certify that on this 6th day of October, 2016, I filed the foregoing using the Court's CM/ECF system, which will send notice of the filing and a copy thereof to all counsel of record.

                         /s/George M. Rozzell IV
                         George M. Rozzell IV (08032)