IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ELIZABETH FRYBERGER**                                           **PLAINTIFF**

v.                        No. 5:16-cv-05224 PKH

**UNIVERSITY OF ARKANSAS-
FAYETTEVILLE and BOARD
OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS**                               **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT OF
<u>MOTION FOR AN EXPEDITED ORDER QUASHING SUBPOENA</u>**

The Defendants respectfully request an expedited Order quashing a deposition subpoena that Plaintiff Elizabeth Fryberger has issued (but not served) to attorney Tamla Lewis, who previously represented the Defendants regarding the purported events alleged in Fryberger's Complaint in this Title IX lawsuit. Lewis is an attorney who serves as the Associate Dean for Administration at the University of Arkansas School of Law. At the time of the purported events alleged in this lawsuit, however, Lewis served in the University's Office of the General Counsel. As such, Lewis represented the Defendants regarding those purported events.

Plaintiff's counsel indicated by email that he intends to depose Lewis and nine other individuals. Defendants' counsel proposed a deposition schedule for four of the individuals who are employed by the University, stated that many of the individuals are no longer employed by the University and no longer reside in Arkansas, and voiced the Defendants' opposition to Fryberger's request to depose Lewis because she had represented them. Plaintiff's counsel responded that it was his client's position that Lewis is a necessary witness about two matters: (1) a letter signed by Lewis when she was a member of the University's Office of the General Counsel in response to an inquiry by Fryberger's advocate (an attorney named Laura Dunn)

1

about a document issued by the University concerning the student disciplinary appeal submitted by the individual whom the University found responsible for sexually assaulting Fryberger; and (2) purported "discussions of November 14th and 17th related to Ms. Fryberger's request for accommodations that were under consideration" by the University after the assault. Defendants' counsel responded that his research indicated that a deposition of Lewis would be impermissible and that the Defendants continued to oppose the Plaintiff's efforts to depose her. Plaintiff's counsel stated that he would send a subpoena for Lewis and that the Defendants could move to quash it. **Defendant's Exhibit A.** Accordingly, the Defendants have in good faith conferred with the Plaintiff in an effort to resolve their dispute concerning whether the Plaintiff may depose Lewis, but the parties have been unable to resolve their disagreement without the intervention of the Court. *See* Fed. R. Civ. P. 26(c)(1); Local Rule 7.2(g).

The Plaintiff has issued (but not served) a subpoena to Lewis to testify during a deposition on March 29. **Defendants' Exhibit B.** The Plaintiff should be prohibited from deposing her. The United States Court of Appeals for the Eighth Circuit "view[s] the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Court of Appeals has made clear that "the practice of deposing opposing counsel detracts from the quality of client representation[,]" and that "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Id*. The Court emphasized, "the 'chilling effect' that such practice will have on the truthful communications from the client to the attorney is obvious." *Id*. Although Lewis no longer represents the Defendants, forcing her to

testify in this matter would have a chilling effect on the communications between numerous attorneys and countless clients who need their advice.

The Court of Appeals established a three-prong test for determining whether a party should be allowed to depose opposing counsel. Unless the party that wishes to take the deposition satisfies all three prongs, he or she may not take the deposition. Under this test, the taking of opposing counsel's deposition "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see*, *e.g.*, *Fireman's Fund Insurance Co. v. Superior Court,* 140 Cal. Rptr. 677, 679, 72 Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. All three of the prongs weigh in favor of prohibiting Fryberger from deposing Lewis.

Fryberger cannot show that no other means exist to obtain the information that she wants than to depose Lewis. Regarding "the University's response to the request for clarification of the appeal decision[,]" the Plaintiff offered that response (a letter signed by Lewis when she was still a member of the University's Office of the General Counsel) into evidence during the video deposition of Laura Dunn[1], which the Plaintiff apparently intends to present during any trial of this matter. *See* **Defendants' Exhibit C (designated by Plaintiff as confidential and thus filed under seal as required by the Protective Order.)** The Defendants did not (and still do not) object to the introduction of that response into evidence. Because the Plaintiff has offered the response into evidence without objection, she does not need Lewis' testimony to lay a foundation for its introduction.

---

[1] The Plaintiff took Dunn's deposition on March 12. As of this writing, the Defendants do not have a copy of the transcript.

Likewise, means other than deposing Lewis exist for Fryberger to obtain information about the purported "discussions of November 14th and 17th related to Ms. Fryberger's request for accommodations that were under consideration." **Defendants' Exhibit A.** The Defendants have agreed to produce four witnesses for depositions during the week of March 25, and the Plaintiff will have an opportunity to ask them about the purported discussions. These four witnesses are: (1) Dean of Students, Melissa Harwood-Rom; (2) then Interim Title IX Coordinator, Monica Holland; (3) Director of the University's Office of Student Standards and Conduct, Rachel Eikenberry; and (4) the University police officer, Capt. Greg Foster, who interviewed Fryberger and her alleged assailant. Discovery exchanged with Plaintiff makes clear that among the witnesses scheduled are individuals with substantial knowledge and involvement in responding to requests for accommodations made by Plaintiff, and who are not attorneys. The Plaintiff cannot meet her burden of satisfying the first prong.

The Plaintiff also cannot meet her burden of satisfying the second prong because the information possessed by Lewis is not relevant, constitutes work product, and is protected by the attorney-client privilege. "'[I]n-house counsel' is afforded the same protection as 'outside counsel' with respect to the work-product doctrine and the attorney-client privilege." *Shelton* at 1336 n.3 (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).

With regard to the University's response to the request for clarification of the appeal decision, Lewis' rationale underlying the comments that she made in the University's response is work product. "The work-product doctrine not only protects from discovery materials obtained or prepared in preparation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Id*. at 1328 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)("an attorney's thoughts are 'inviolate'"); *In re Murphy*, 560

F.2d 326, 336 (8th Cir. 1977)("attorney's opinion work product enjoys absolute immunity and can be discovered in very rare and extraordinary circumstances"); Fed. R. Civ. P. 26(b)(3)("unlike ordinary work product, opinion work product cannot be discovered upon a showing of substantial need or undue hardship")). Similarly, Lewis' thoughts and legal opinions about any discussions related to any requests by Fryberger for accommodations are work product.

In addition, the Defendants consulted with Lewis concerning matters that are at issue in this lawsuit, and she advised them about those matters. Those communications are protected by the attorney-client privilege. The Supreme Court recognizes "[t]he attorney-client privilege [as] the oldest of the privileges for confidential communications known to the common law." *Upjohn Co.*, 449 U.S. at 389. The Court has explained that the privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader pubic interests in the observance of law and administration of justice." *Id*. Because the Plaintiff asserts a violation of federal law, this federal common law governs the Defendants' claim of attorney-client privilege. Fed.R.Evid. 501. Any assertion that Arkansas law concerning the privilege applies in this lawsuit would be mistaken because the Plaintiff has not asserted any state-law claims. *See id*. Although Plaintiff's counsel has stated that he does not intend to ask Lewis about any communications that she had with the Defendants, he cannot question her about any alleged discussions that she had with the Defendants about the letter or related matters without asking her to violate the attorney-client privilege. Fryberger cannot meet the second prong of the test and should be prohibited from deposing Lewis.

Moreover, Lewis' thoughts, opinions, and communications about these matters are not relevant. Lewis' letter speaks for itself, and Fryberger received the accommodations that she received regardless of what Lewis did or did not discuss with her clients.

Third, information possessed by Lewis is not crucial to the preparation of the Plaintiff's case. As just discussed, it is not even relevant. And, once again, the Defendants have not objected to introduction of the University's response to the request for clarification of the appeal decision, so the Plaintiff does not need Lewis' testimony to introduce it into evidence. Moreover, during Dunn's deposition, the Defendants objected to her opinions about the law because they are not relevant and any probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. Whether Dunn or Lewis has a better understanding of the law is not crucial (or even relevant) to the issue in this case, which is whether the Defendants were deliberately indifferent. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642-43 (1999). Similarly, Lewis' testimony about any discussions concerning accommodations is not crucial to the preparation of the Plaintiff's case because she may ask questions about those discussions (so long as they do not violate the privilege) during the upcoming depositions. Like the first two prongs of the test, the Plaintiff fails the third.

Under *Shelton*, the Plaintiff must pass all three prongs of the test, but she cannot pass any. Accordingly, she should be prohibited from deposing Lewis.

Respectfully submitted,

University of Arkansas Office
of the General Counsel

By: /s/ C. Joseph Cordi, Jr.
Arkansas Bar No. 91225
Associate General Counsel
University of Arkansas

421 Administration Building
Fayetteville, AR 72701
Telephone: (479) 575-5401
Facsimile: (479) 575-5046
joecordi@uark.edu

Counsel for Defendants University of
Arkansas-Fayetteville, and Board of
Trustees of the University of Arkansas